IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**BRENDA ENID SANTIAGO-CRUZ**,
 Petitioner,

 v.

**COMMISSIONER OF SOCIAL SECURITY**,
 Defendant.

Civil No. 19-1239 (BJM)

## OPINION AND ORDER

 Brenda Enid Santiago-Cruz ("Santiago") seeks review of the Social Security Administration Commissioner's ("the Commissioner's") finding that she is not entitled to disability benefits under the Social Security Act ("the Act"), 42 U.S.C. § 423. Santiago contends that the administrative law judge ("ALJ") improperly evaluated the medical evidence and erred in making her residual functional capacity ("RFC") determination. Docket No. ("Dkt.") 24. The Commissioner opposed. Dkt. 25. This case is before me by consent of the parties. Dkt. 7. For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

## STANDARD OF REVIEW

 After reviewing the pleadings and record transcript, the court has "the power to enter a judgment affirming, modifying, or reversing the decision of the Commissioner." 20 U.S.C. § 405(g). The court's review is limited to determining whether the Commissioner and his delegates employed the proper legal standards and found facts upon the proper quantum of evidence. *Manso-Pizarro v. Secretary of Health & Human Services*, 76 F.3d 15, 16 (1st Cir. 1996). The Commissioner's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C.§ 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *Ortiz v. Secretary of Health & Human Services*, 955 F.2d 765, 769 (1st Cir. 1991). Substantial evidence means "'more than a mere scintilla.' . . . It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S.

Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (internal citation omitted). The court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodríguez Pagán v. Secretary of Health & Human Services*, 819 F.2d 1, 3 (1st Cir. 1987).

A claimant is disabled under the Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the statute, a claimant is unable to engage in any substantial gainful activity when he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). In determining whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a)(3).

The Commissioner employs a five-step evaluation process to decide whether a claimant is disabled. 20 C.F.R. § 404.1520; *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Goodermote v. Secretary of Health & Human Services*, 690 F.2d 5, 6-7 (1st Cir. 1982). At step one, the Commissioner determines whether the claimant is currently engaged in "substantial gainful activity." If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). If not, the disability claim is denied. At step three, the Commissioner must decide whether the claimant's impairment is equivalent to a specific list of impairments contained in the regulations' Appendix 1, which the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404, Subpt. P, App. 1. If the claimant's impairment meets or equals one of the listed impairments, he is conclusively presumed to be disabled. If not, the evaluation proceeds to the fourth step, through

which the ALJ assesses the claimant's RFC and determines whether the impairments prevent the claimant from doing the work he has performed in the past.

An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. § 404.1520(e) and 404.1545(a)(1). If the claimant can perform his previous work, he is not disabled. 20 C.F.R. § 404.1520(e). If he cannot perform this work, the fifth and final step asks whether the claimant can perform other work available in the national economy in view of his RFC, as well as age, education, and work experience. If the claimant cannot, then he is entitled to disability benefits. 20 C.F.R. § 404.1520(f).

At steps one through four, the claimant has the burden of proving he cannot return to his former employment because of the alleged disability. *Santiago v. Secretary of Health & Human Services*, 944 F.2d 1, 5 (1st Cir. 1991). Once a claimant has done this, the Commissioner has the burden under step five to prove the existence of other jobs in the national economy the claimant can perform. *Ortiz v. Secretary of Health & Human Services*, 890 F.2d 520, 524 (1st Cir. 1989).

Additionally, to be eligible for disability benefits, the claimant must demonstrate that his disability existed prior to the expiration of his insured status, or his date last insured. *Cruz Rivera v. Secretary of Health & Human Services*, 818 F.2d 96, 97 (1st Cir. 1986).

## BACKGROUND

The following facts are drawn from the transcript ("Tr.") of the record of proceedings.

Santiago was born on February 21, 1971. Tr. 24. She spent her career working as a baker but stopped working after developing various health problems, including neck pain, back pain, shoulder pain, and depression. *See, e.g.*, Tr. 17, 40, 346. On February 27, 2014, Santiago applied for disability benefits, claiming an onset date of April 28, 2012. Tr. 15. The Commissioner denied Santiago's claim initially, on reconsideration, and after a hearing before an ALJ. *Id.* The record before the Commissioner is summarized below.

From May 2012 to August 2014, Santiago several times sought treatment for musculoskeletal problems with Dr. Jose J. Larrauri. *See* Tr. 293-96, 331-35, 380-89. Although

Santiago-Cruz v. Commissioner of Social Security, Civil No. 19-1069 (BJM)                                            4

treatment notes are largely illegible, records indicate that Dr. Larraui diagnosed Santiago with degenerative disc disease and prescribed pain medications and muscle relaxants. Tr. 20, 275, 387.

Lumbar and cervical imaging indicates that Santiago has suffered from various musculoskeletal problems. Imaging dated December 7, 2012 showed pelvic calcifications consistent with pelvic phleboliths in the lumbar spine as well as cervical muscle spasm and mild degenerative changes with spondylosis in the cervical spine. Tr. 297. MRIs dated March 21, 2014 showed the following: mild posterior disc bulge without spinal canal stenosis at C4-C5, moderate posterior disc osteophyte complex and mild to moderate narrowing of the bilateral neural foramina at C5-C6, a very mild posterior disc bulge at L3-L4 without stenosis, minimal posterior disc bulge and mild facet arthropathy at L4-L5, mild facet arthropathy at L5-S1, mild decreased T2 signal in the intervertebral discs in the upper lumbar spine consistent with degeneration, mild posterior disc bulge flattening the anterior thecal sac at L2-L3, very mild disc protrusion at T6-T7, and facet arthropathy throughout the thoracic spine. Tr. 286-91. A cervical MRI dated May 27, 2014 showed degenerative changes characterized by intervertebral disc space narrowing and disc desiccation, disc osteophyte complex with minimal effacement of the ventral sac at both C4-C5 and C5-C6, mild bilateral neural foraminal narrowing at C5-C6, and disc osteophyte complex at C6-C7. Tr. 366. Shoulder imaging dated August 18, 2014 showed a potential sclerotic bone lesion at the left humeral head. Tr. 337.

On August 18, 2014, Santiago saw Dr. Limary Ríos Camacho ("Dr. Ríos"), a neurologist, for a consultative examination. Tr. 341. Dr. Ríos observed that Santiago had a normal gait and full strength in both lower extremities. Tr. 342. She found that Santiago's knee flexion and hip range of motion were normal, but she recorded limited range of motion in the back, neck, and shoulders. Tr. 343-44. Dr. Ríos also observed decreased strength in Santiago's left and right hands as well as certain sensory changes. Tr. 341. She diagnosed Santiago with bilateral shoulder tendinitis and cervical and lumbar myositis and reported that Santiago had "no neurological deficit, but she might have some impairments for heavy lifting and material handling." Tr. 347.

Non-examining state agency physician Dr. Ramon A. Ruiz Alonso ("Dr. Ruiz") reviewed the record and offered a physical RFC assessment. Tr. 103. Dr. Ruiz determined that Santiago could occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk for about six hours in an eight-hour workday, and sit for about six hours in an eight-hour workday. Tr. 101. She could frequently climb, balance, stoop, kneel, crouch, and crawl, and she could handle, finger, feel, push, and pull on an unlimited basis. Tr. 102. He also found that Santiago's ability to lift toward the left and right overhead was limited. *Id.* On reconsideration, Dr. Jose Gonzalez-Mendez affirmed these findings. Tr. 121.

The record also contains evidence of a mental impairment. Santiago sought psychiatric treatment with Dr. Luis Toro-Perez ("Dr. Toro"). Tr. 299. Between September 2013 and June 2014, Santiago saw Dr. Toro every two weeks for depression. Tr. 299. Dr. Toro's treatment notes indicate that Santiago reported being very depressed and anxious. Tr. 371-78. She reported suffering from crying spells, insomnia, and constant and severe pain in the lumbar and cervical regions. *Id.* Dr. Toro described Santiago as withdrawn and reclusive and various times noted that she was unable to complete household tasks. *Id.*

Dr. Toro prepared a report in which he explained that Santiago's mental condition commenced in January 2010 and caused her feelings of sadness, anxiety, insomnia, and crying spells. Tr. 299. He found that, although Santiago was well-oriented to person, place, and time, she was socially withdrawn, argumentative, and very depressed. Tr. 300-01. Dr. Toro found no evidence of delusions or high-risk behavior, but he noted evidence of psychomotor retardation, observing that Santiago's speech was not spontaneous. *Id.* He also reported that Santiago's intellectual abilities were greatly diminished, that she suffered marked difficulties with recent memory, and that she was inattentive. Tr. 301. Dr. Toro described Santiago's judgment and insight as poor, reporting that she was unable to understand situations, respond appropriately, initiate social contact, communicate, participate in group activities, make decisions, interact with supervisors, complete or focus on tasks, tolerate stress, or complete a normal workday without interruption. Tr. 302. He also reported that Santiago was unable to complete housework and could

not handle finances. Tr. 302-03. Dr. Toro diagnosed Santiago with major depression, described her prognosis as poor, and assigned a Global Assessment of Functioning ("GAF") score of 50-55.[1] Tr. 303.

On August 22, 2014, Santiago visited Dr. Roberto Irizarry Rivera ("Dr. Irizarry"), a psychologist, for a consultative examination. Tr. 350. She reported suffering from a depressed mood, irritability, loss of energy, decreased interest in most activities, and hopelessness. Tr. 352. Dr. Irizarry found that Santiago could care for her personal hygiene, engage in some daily activities, and handle funds. Tr. 352, 355. He reported that, although Santiago suffered from a depressed mood, she was appropriately dressed with a clean appearance, maintained adequate eye contact and psychomotor activity, used mostly normal speech with a normal tone of voice, established good rapport, and answered all questions posed. Tr. 353. Santiago's thought process was coherent, relevant, and logical; she had no homicidal ideas, delusions, or phobias; and she was oriented to time, place, person, and circumstance. *Id.* Dr. Irizarry found that Santiago's intellectual ability, attention, concentration, social judgment, and insight were slightly diminished, while her short-term, recent, and long-term memory were adequate. *Id.* He diagnosed Santiago with major depressive disorder, described her prognosis as moderate, and assigned a GAF score of 50. Tr. 355.

Non-examining state agency psychologist Dr. Zulma Nieves ("Dr. Nieves") offered a mental RFC assessment. She opined that Santiago was not significantly limited in her ability to remember work-like procedures or simple instructions but that she had moderate limitations when it came to remembering detailed instructions. Tr. 104. Dr. Nieves explained that Santiago could not recall complex and detailed tasks but could consistently and effectively perform one- and two-step instructions. *Id.* She also found that Santiago could follow simple work-like procedures, make simple work-related decisions, sustain attention up to two hours at a time, and perform at a consistent pace if engaged in simple, repetitive tasks. *Id.* She also determined that Santiago had

---

[1] "GAF is a scale from 0 to 100 used by mental health clinicians and physicians to subjectively rate the social, occupational, and psychological functioning of adults.'" *Hernández v. Comm'r of Soc. Sec.*, 989 F. Supp. 2d 202, 206 n. 1 (D.P.R. 2013) (quoting Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders*-IV 32 (4th ed. text rev. 2000) ("DSM–IV–TR")).

moderate limitations with regard to interacting with the public and receiving criticism from supervisors, but that she was not significantly limited with regard to asking simple questions, requesting assistance, getting along with coworkers and peers, and maintaining socially appropriate behavior. Tr. 105. Dr. Nieves opined that Santiago's symptoms would limit her "adaptation for [a] detailed and complex setting but not for a simple one." *Id.* On reconsideration, Dr. Jennifer Cortes affirmed these findings. Tr. 118, 124.

After the Commissioner denied Santiago's claim for disability benefits initially and on reconsideration, Santiago appeared for a hearing before an ALJ. Tr. 32-58. She testified that she had worked as a baker for 18 years but could no longer work. Tr. 40. She reported suffering from constant headaches, back and neck pain, and difficulty sleeping. Tr. 47-51. She could no longer bend down or squat and could only sleep three to four hours per night. Tr. 47-49. Santiago also stated that she suffers from depression, feels lonely, and has painful memories. Tr. 50-51. She lives with her family, relying on her partner and children for help with household chores, dressing, and bathing. Tr. 46-47. She could no longer drive and does not leave her home often, although she attends church and occasionally goes for a stroll with her children to get ice cream. Tr. 46, 53. She does not like social visits. Tr. 50.

The ALJ announced her decision on June 29, 2017. She determined that Santiago had not engaged in substantial gainful activity from April 28, 2012 (her alleged onset date) through March 31, 2015 (her date last insured). Tr. 17. The ALJ then found that Santiago had the following severe impairments: degenerative disease of the cervical, thoracic, and lumbar spine; bilateral shoulder tendonitis; and major depressive disorder. *Id.* None of these impairments, however, met or equaled a listing. *Id.* Next, the ALJ determined that Santiago could perform light work[2] except that she can frequently stoop, kneel, crouch crawl, climb ramps and stairs, and reach bilaterally overhead, and

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). Individuals capable of performing light work can also perform sedentary work, "unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." *Id.*

she can never climb ropes, ladders, or scaffolds. Tr. 19. She also found that Santiago can understand, remember, carry out simple instructions, and perform simple tasks, and she can maintain attention for 2-hour blocks throughout an 8-hour workday. *Id.* She can complete assigned tasks with ordinary supervision; frequently communicate with the public, supervisors, and coworkers; make simple decisions; adapt to changes in a simple and routine work environment; and adhere to a normal schedule. Tr. 19-20.

In making her RFC determination, the ALJ considered Dr. Ríos's view that Santiago "might have some impairments for heavy lifting and material handling." Tr. 21. The ALJ gave that opinion partial weight "because it is somewhat vague and does not provide a specific functional assessment." *Id.* The ALJ nonetheless acknowledged Dr. Ríos's findings with regard to Santiago's shoulder, neck, hand, and back conditions, explaining that a limitation to light work was consistent with Dr. Ríos's findings of tenderness, diminished sensation, and pain. *Id.* The ALJ also accorded great weight to the opinions of the state agency non-examining physicians, finding them consistent with the record as a whole and well-supported by objective findings. *Id.* Additionally, the ALJ considered Dr. Toro's opinion but accorded it little weight, deeming it inconsistent with the record as a whole. Tr. 22. Further, the ALJ accorded partial weight to the opinion of Dr. Irizarry, explaining that the GAF score of 50 he assigned was inconsistent with his other findings. Tr. 23. The ALJ also afforded great weight to the opinions of state agency non-examining psychologists, finding them consistent with the record as a whole. Tr. 23.

Next, the ALJ determined that Santiago could not perform her past relevant work as a baker; however, in light of vocational expert testimony, Santiago could perform work as a cashier, fast food worker, or cigar inspector. Tr. 24-25. Accordingly, the ALJ found that Santiago was not disabled under the Act.

The Appeals Council denied review, Tr. 1, and this action followed.

# DISCUSSION

Santiago maintains that the ALJ's RFC finding is faulty because it fails to properly account for the medical evidence from Dr. Ríos and Dr. Toro. The Commissioner maintains that substantial evidence supports the ALJ's decision.

RFC is the most a claimant can do despite his or her limitations. 20 C.F.R. § 416.945(a)(1). An RFC assessment is "ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) (citing 20 C.F.R. §§ 416.927(e)(2), 416.946). But because "a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Id.* When measuring a claimant's capabilities, "an expert's RFC evaluation is ordinarily essential unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person." *Santiago v. Sec'y of Health & Human Servs.*, 944 F.2d at 7 (1st Cir. 1991). The reason for requiring an expert's RFC assessment is that generally, "an ALJ, as a lay person, is not qualified to interpret raw data in a medical record." *Manso–Pizarro*, 76 F.3d at 17 (per curiam); *see also Gordils v. Sec'y of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990) (per curiam) ("[S]ince bare medical findings are unintelligible to a lay person in terms of residual functional capacity, the ALJ is not qualified to assess residual functional capacity based on a bare medical record."). "This principle does not mean, however, that the [Commissioner] is precluded from rendering common-sense judgments about functional capacity based on medical findings, as long as the [Commissioner] does not overstep the bounds of a lay person's competence and render a medical judgment." *Gordils*, 921 F.2d at 329.

With regard to physical limitations, the ALJ determined that Santiago could perform light work except that she can frequently stoop, kneel, crouch, crawl, climb ramps and stairs, and reach bilaterally overhead. Tr. 19. Further, she can never climb ropes, ladders, or scaffolds. Tr. 19. Santiago maintains that this determination is not supported by substantial evidence in light of evidence from Dr. Ríos, who found that Santiago had a limited range of motion in the back, neck, and shoulders; 4/5 hand strength; and certain sensory changes in the hands. Tr. 341-44. She argues

Case 3:19-cv-01239-BJM   Document 26   Filed 12/03/20   Page 10 of 15

Santiago-Cruz v. Commissioner of Social Security, Civil No. 19-1069 (BJM)                     10

that the ALJ failed to adequately discuss Dr. Ríos's findings and improperly relied on selective portions of her examination.

This is incorrect. The ALJ expressly addressed Dr. Ríos's opinion and explained that, because it was vague and failed to provide a specific functional assessment, it was due only partial weight. Given that the medical opinion in question consisted of a statement that Santiago "might have some impairments for heavy lifting and material handling," Tr. 347, I cannot disagree. Further, Santiago fails to explain why Dr. Ríos's findings are inconsistent with the ALJ's RFC determination. Although it is true that Dr. Ríos identified various limitations with regard to Santiago's back, neck, and shoulder movement, she also recorded normal findings, such as a normal gait, full strength in both lower extremities, normal knee flexion, normal hip range of motion, and no neurological deficits. Tr. 343-47. As the ALJ explained, these findings are consistent with a limited range of light work. Dr. Ríos's opinion that Santiago might have limitations related to heavy lifting also supports the ALJ's finding that Santiago can perform light work, which involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). Although Dr. Ríos's opinion might support greater limitation related to "material handling," Santiago has not asked the court to find that this is the case. Nor is the ALJ required to make such a finding: as the ALJ explained, the record does not otherwise support such a limitation.

Additionally, the ALJ's physical RFC finding is supported by the opinion of non-examining physician Dr. Ruiz, who determined that Santiago could occasionally lift twenty pounds; frequently lift ten pounds, stand and/or walk for about six hours in an eight-hour workday; sit for about six hours in an eight-hour workday; frequently climb, balance, stoop, kneel, crouch, and crawl; handle, finger, feel, push, and pull without limitation; and lift toward the left and right overhead with limitation. Tr. 101-02. Given the opinions offered both by Dr. Ríos and Dr. Ruiz, I find the ALJ's physical RFC determination supported by substantial evidence.

Next, Santiago challenges the ALJ's mental RFC determination.[3] The ALJ determined that Santiago can understand; remember; carry out simple instructions; perform simple tasks; maintain attention for 2-hour blocks throughout an 8-hour workday; complete assigned tasks with ordinary supervision; frequently communicate with the public, supervisors, and coworkers; make simple decisions; adapt to changes in a simple, routine work environment; and adhere to a normal schedule. Tr. 19-20. This determination is supported by the opinions of Dr. Nieves and Dr. Irizarry.

After reviewing the medical evidence, non-examining psychologist Dr. Nieves opined that Santiago could consistently and effectively perform one- and two-step instructions, follow simple work-like procedures, make simple work-related decisions, sustain attention up to two hours at a time, and perform at a consistent pace if engaged in simple, repetitive tasks. Tr. 104. Although she determined that Santiago had moderate limitations related to interacting with the public and receiving criticism from supervisors, Dr. Nieves found that Santiago was not significantly limited with regard to asking simple questions, requesting assistance, getting along with coworkers and peers, and maintaining socially appropriate behavior. Tr. 105. These findings support the ALJ's conclusion that Santiago can perform simple tasks in a routine work environment with frequent communication with the public, supervisors, and coworkers.

Likewise, Dr. Irizarry, a psychologist who performed a consultative examination, found that Santiago suffered from few mental functional limitations, aside from slightly diminished intellectual ability, attention, concentration, social judgment, and insight. He reported that Santiago could care for her personal hygiene, engage in some daily activities, and handle funds. Tr. 352, 355. Although she suffered from a depressed mood, Santiago appeared at her appointment appropriately dressed with a clean appearance, maintained adequate eye contact and psychomotor activity, used mostly normal speech with a normal tone of voice, established good rapport, and

---

[3] In defending the agency's decision, the Commissioner cites to portions of the transcript that have not been translated into English, while Santiago relies only on portions of the transcript that are in English. *See, e.g.*, Dkt. 25 at 9 (citing Tr. 304-22). Consistent with the Jones Act, which "requires that '[a]ll pleadings and proceedings in the United States District Court for the District of Puerto Rico . . . be conducted in the English language,'" I do not consider the untranslated records on which the Commissioner attempts to rely. *United States v. Rivera-Rosario*, 300 F.3d 1, 5–6 (1st Cir. 2002) (quoting 48 U.S.C. § 864).

answered all of Dr. Irizarry's questions. Tr. 353. Her thought process was coherent, relevant, and logical; she had no homicidal ideas, delusions, or phobias; she was oriented to time, place, person, and circumstance; and her memory was adequate. *Id.* Again, these findings support the ALJ's determination that Santiago could function in a simple work setting.

The only portion of Dr. Irizarry's report that cuts against the ALJ's mental RFC determination is the fact that he assigned a GAF score of 50. Prior to 2013, mental health professionals used the GAF rating system "to turn raw medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning." *González-Rodríguez v. Barnhart*, 111 Fed. Appx. 23, 25 (1st Cir. 2004) (per curiam) (unpublished) (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)). But GAF scores were discontinued in the current *Diagnostic and Statistics Manual of Mental Disorders* "'for several reasons, including [their] conceptual lack of clarity . . . and questionable psychometrics in routine practice.'" *Hall v. Colvin*, 18 F. Supp. 3d 144, 153 (D.R.I. 2014) (quoting Am. Psychiatric Ass'n, *Diagnostic and Stat. Manual of Mental Disorders DSM–V* 16 (5th ed. 2013) ("DSM-V")). Still, GAF scores were part of the DSM-IV-TR at the time of Santiago's treatment. Because GAF scores are no longer used in the DSM-V, the Commissioner, through Administrative Memorandum AM-13066, directed adjudicators to continue receiving and considering GAF scores as they would other opinion evidence but explained that the score must have supporting evidence to be given significant weight. *Valentín-Incle v. Comm'r of Soc. Sec.*, Civ. No. 15-2137 (MEL), 2018 WL 6721340, at *10 n.2 (D.P.R. Dec. 19, 2018) (citations omitted). The memorandum explains as follows:

> By itself, the GAF cannot be used to "raise" or "lower" someone's level of function. The GAF is only a snapshot opinion about the level of functioning. It is one opinion that we consider with all the evidence about a person's functioning. Unless the clinician clearly explains the reasons behind his or her GAF rating, and the period to which the rating applies, it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis.

*Lane v. Colvin*, Civ. No. 13–5658 (MJP), 2014 WL 1912065, *9 (W.D. May 12, 2014) (quoting AM–13066). In other words, a GAF score is not dispositive when it comes to the severity of an impairment.

Here, the GAF score Dr. Irizarry assigned contradicts his other findings. "A GAF of 41-50 indicates 'serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifiting) [or] moderate difficulty in social, occupations, or school functioning (e.g., no friends, unable to keep a job'")). *López-López v. Colvin*, 138 F. Supp. 3d 96, 100 n. 7 (D. Mass. 2015) (quoting DSM-IV-TR at 34). Having assigned a GAF score of 50, Dr. Irizarry indicated that Santiago suffered from severe symptoms or at least moderate difficulty in social or occupational functioning. But the remainder of his report discusses only *slightly* diminished mental functioning. In light of this inconsistency, the ALJ acted within her discretion when she credited Dr. Irizarry's report without crediting the GAF score he assigned. *See Seavey v. Barnhart*, 276 F.3d 1, 10 (1st Cir. 2001) ("[T]the responsibility for weighing conflicting evidence, where reasonable minds could differ as to the outcome, falls on the Commissioner and his designee, the ALJ. It does not fall on the reviewing court.") (internal citation omitted); *Martinez v. Colvin*, Civ. No. 13-30124 (KPN), 2014 WL 3735889, at *3 (D. Mass. July 11, 2014) ("GAF scores have been deemed unreliable by the Social Security Administration itself and, accordingly, it would be an error for an administrative law judge to focus on a doctor's assessed GAF scores, rather than the doctor's findings and opinions, to credit or discredit medical evidence.") (citation and internal quotation marks omitted).

In sum, Dr. Irizarry's evaluation and Dr. Nieves's functional assessment both support the ALJ's mental RFC determination. Nonetheless, Santiago maintains that the ALJ's RFC determination is not supported by substantial evidence because it fails to adequately account for the evidence from Dr. Toro, a treating psychiatrist.

Under the applicable regulations, opinions from treating sources are given controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with other substantial evidence" in the record. 20 C.F.R. §§

404.1527(c)(2), 416.927(c)(2).[4] An opinion from a treating source that does not get controlling weight is weighed according to several factors, including the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the evidence in support of the medical opinion; the consistency of the medical opinion with the record as a whole; the medical source's specialty; and other factors which tend to support or contradict the opinion. *Id.* §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). An ALJ need not expressly address each factor identified by the regulations but must provide "good reasons" for the weight assigned to the opinion of a treating source. *Olmeda v. Astrue*, 16 F. Supp. 3d 23, 31 (D.P.R. 2014); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Without a doubt, Dr. Toro's opinion would support a more restrictive mental RFC than that which the ALJ adopted. Dr. Toro reported that Santiago's intellectual abilities were greatly diminished, that she suffered marked difficulties with recent memory, and that she was inattentive. Tr. 301. He opined that she was unable to understand situations, respond appropriately, initiate social contact, communicate, participate in group activities, make decisions, interact with supervisors, complete or focus on tasks, tolerate stress, or complete a normal workday without interruption. Tr. 302-03. He described her prognosis as poor and assigned a GAF score of 50-55.[5] Tr. 303. Had the ALJ afforded Dr. Toro's opinion controlling weight, the mental RFC determination would have included more severe restrictions. But the ALJ was not required to credit this opinion.

Although the ALJ considered Dr. Toro's opinion, she offered that opinion little weight, finding it inconsistent with the record as a whole. Tr. 22. Indeed, Dr. Toro's treatment notes fail to corroborate the severe mental limitations he documented in his psychiatric report. Rather, they show that Santiago suffered from general complaints of anxiety, depression, and physical pain. The ALJ also discussed the ways in which Dr. Toro's opinion conflicted with other medical

---

[4] The Commissioner revised the relevant regulations effective March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Because Santiago's claim was filed on February 27, 2014, the older regulations apply.

[5] GAF scores of 51 to 60 indicate moderate symptoms or difficulty in functioning. *Martinez*, 2014 WL 3735889, at *3 (citing DSM–IV–TR at 34).

opinions in the record, including those of Dr. Irizarry and the reviews by the non-examining state agency psychologists. I am satisfied that the ALJ provided good reasons for affording Dr. Toro's opinion little weight and crediting instead those psychologists who determined that Santiago could function in a simple, routine work environment. The ALJ's mental RFC determination is thus supported by substantial evidence.

Ultimately, it is the Commissioner's responsibility to determine issues of credibility, draw inferences from the record evidence, and resolve conflicts in the evidence (*see Ortiz*, 955 F.2d at 769 (citing *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981); *Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 141 (1st Cir. 1987)). Here, the ALJ was faced with conflicting opinions regarding the effects of Santiago's mental impairment on her ability to function in the workplace, and she appropriately resolved those conflicts. After thoroughly and carefully reviewing the record, I find that there is substantial evidence to support the ALJ's RFC finding.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 3rd day of December, 2020.

*S/ Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge